**Opinion issued March 14, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00349-CV

———————————

**ANDRIA SOLOMON, Appellant**

**V.**

**ROSEMARY BUCKLE, NICOLE D. CHES, AND HCA HEALTH SERVICES OF TEXAS, INC., Appellees**

---

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-05959**

---

## O P I N I O N

Andria Solomon appeals from the trial court's order dismissing her suit for failing to file the expert report required by the Texas Medical Liability Act. Rosemary Buckle, Nicole D. Ches, and HCA Health Services of Texas, Inc. cross-

appeal, contending that the trial court erred in not awarding them their attorney's fees. As explained below, we affirm the trial court's judgment in its entirety.

Buckle, Ches, and HCA Health Services have also moved to sanction Solomon or her counsel for misstatements made in her brief. We deny the motion.

## BACKGROUND

### Plaintiff's Lawsuit

Solomon sued Buckle and Ches for negligence. Solomon also sued HCA Health Services, alleging that it was liable for Buckle's and Ches's negligence because Buckle and Ches acted as agents or employees of HCA Health Services.

According to Solomon's live pleading, she sought medical treatment from and was examined by Buckle regarding a knee injury Solomon sustained in a car accident. Solomon alleges that Buckle afterward submitted an attending physician's statement to Solomon's disability benefits insurer that falsely represented that Buckle had made certain exams, observations, and findings, and that Solomon's insurer then terminated Solomon's disability benefits based on this false attending physician's statement. Ches, not Buckle, signed the attending physician's statement.

Solomon alleged that Buckle had a duty to ensure that the attending physician's statement was accurate and breached this duty because she knew the statement was false. Solomon further alleged that Ches likewise had a duty to ensure

the accuracy of this statement and breached this duty by signing the statement based on the false information supplied by Buckle without verifying its truthfulness.

**Defendants' Motion to Dismiss**

Buckle, Ches, and HCA Health Services moved to dismiss Solomon's lawsuit under the Texas Medical Liability Act based on Solomon's failure to serve an expert report supporting her negligence claim. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(b)(2) (requiring dismissal if expert report not timely served as to health care liability claims). They also sought attorney's fees in connection with the dismissal. *See id.* § 74.351(b)(1) (requiring award of fees in event of dismissal).

**Plaintiff's Response to Motion to Dismiss**

Solomon responded to the motion to dismiss. She argued that her negligence claim is not subject to the Texas Medical Liability Act because this claim does not fall within the definitions of "health care liability claim" or "professional or administrative services." *See id.* § 74.001(a)(13), (24) (defining these terms).

As an exhibit, Solomon attached the attending physician's statement, which is an insurance-related form created by Solomon's insurer. In the form, Buckle or Ches reported that Solomon was seen on April 15, 2021, for knee pain. The form recited the subjective symptoms and objective signs associated with her knee condition, stated the diagnostic tests performed, and identified a plan of treatment that involved a follow-up visit to obtain an MRI. The form also contained various

3

representations about Solomon's physical condition or physical abilities. Among other things, the form identified how long she could sit, stand, and walk; recorded how much weight she could carry and how often she could do so; documented her ability to use her hands to grasp, push, pull, and manipulate objects, as well as her ability to engage in repetitive movements with her feet; and quantified her ability to engage in various tasks by specifying whether and how often she could climb, balance, stoop, kneel, crouch, crawl, and reach above her shoulder. The form is dated June 25, 2021 (and appears to have been faxed to/from someone four days prior).

Solomon also attached as an exhibit a medical record documenting the April 15 visit with Buckle. This record also indicated an MRI was the plan of treatment.

## Trial Court's Ruling

The trial court granted the motion to dismiss and rendered a take-nothing judgment on Solomon's claims. But the trial court did not award attorney's fees.

## DISMISSAL OF THE LAWSUIT

Solomon contends the trial court erred in dismissing her lawsuit under the Texas Medical Liability Act because her claim is not a "health care liability claim."

## Standard of Review

In this case, the dispositive issue concerning the dismissal of Solomon's suit is whether her claims fall within the scope of the Texas Medical Liability Act. Under these circumstances, our review is de novo. *See Methodist Hosp. v. Halat*, 415

4

S.W.3d 517, 520 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (noting that district court's ruling on motion to dismiss under Texas Medical Liability Act is generally reviewed for abuse of discretion, but that review is de novo when applicability of Act to plaintiff's claims is dispositive issue and appellate court must interpret Act).

## Applicable Law

### *Statutory Interpretation in General*

In interpreting a statute, we ascertain and give effect to the intent of the legislature, which we derive from the words of the statute absent ambiguity. *See id.* When statutory terms are defined in the statute itself, we rely on these definitions. *See id.* Otherwise, we interpret statutory terms in conformity with their plain and common meaning, unless the terms have acquired a technical meaning or a contrary meaning is apparent from the context. *See id.*; *see also Taylor v. Taylor*, 608 S.W.3d 265, 267 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (stating that we give statutory terms their common, ordinary meaning unless the legislature has defined them, they have technical meanings, or context shows they have other meanings). We cannot rewrite the statute. *Taylor*, 608 S.W.3d at 268. Accordingly, we cannot add terms the legislature omitted or subtract terms the legislature included. *Id.*

### *The Texas Medical Liability Act*

When a plaintiff asserts a "health care liability claim," the Texas Medical Liability Act requires her to serve an expert report on any defendant physician or

health care provider within 120 days after each defendant's original answer. TEX. CIV. PRAC. & REM. CODE § 74.351(a). The expert report must provide "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6). If the Act applies and the plaintiff fails to timely serve the required expert report, the court must, on the motion of the affected defendant, dismiss the claim. *Id.* § 74.351(b).

The scope of the Texas Medical Liability Act is expansive. *See Bioderm Skin Care v. Sok*, 426 S.W.3d 753, 758 (Tex. 2014) (observing that "broad language of the Medical Liability Act evinces legislative intent for the statute to have expansive application"). The Act defines a "health care liability claim" as "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13).

To be a "health care liability claim" and thus be within the Texas Medical Liability Act's scope, three basic elements must be satisfied. *Lake Jackson Med. Spa*

6

*v. Gaytan*, 640 S.W.3d 830, 840 (Tex. 2022). First, the defendant must be a physician or health care provider. *Id.*; *see* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(12), (23) (defining terms "health care provider" and "physician" for purposes of Act). Second, the plaintiff's claim must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care. *Gaytan*, 640 S.W.3d at 840; *see* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(10), (13), (19), (24) (defining terms "health care," "health care liability claim," "medical care," and "professional or administrative services"); *Rogers v. Bagley*, 623 S.W.3d 343, 350 (Tex. 2021) (noting Act does not define "safety" but Court has defined it as "condition of being 'untouched by danger; not exposed to danger; secure from danger, harm or loss'"). Third, the defendant's conduct must proximately cause the plaintiff's injury or death. *Gaytan*, 640 S.W.3d at 840; *see* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13) (incorporating proximate cause and injury or death into "health care liability claim").

When assessing whether the plaintiff asserts a "health care liability claim," we focus on the underlying nature of the claim, not its label. *Gaytan*, 640 S.W.3d at 836. To ascertain the claim's underlying nature, we look to the entire record, including pleadings, motions and responses, and relevant evidence. *Id.* at 836, 839–40.

We are not bound by the way in which the plaintiff characterizes a claim in her pleadings if they do not accurately reflect the claim's underlying nature. *See Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012) (stating facts underlying claim are determinative of Act's applicability, "not the form of, or artfully-phrased language in, the plaintiff's pleadings describing the facts or legal theories asserted"). Instead, we consider the operative facts underlying the plaintiff's claim that are relevant to her alleged injury, rather than how she describes the facts or legal theories in her pleadings. *Collin Creek Assisted Living Ctr. v. Faber*, 671 S.W.3d 879, 885 (Tex. 2023). If the operative facts could support a "health care liability claim," then the Texas Medical Liability Act applies, and an expert report is required. *See id.*

**Analysis**

The parties' dispute centers on the second of the three elements of a "health care liability claim," namely, whether Solomon's claim concerns treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care. *See Gaytan*, 640 S.W.3d at 840 (identifying this as second of three elements defining "health care liability claim"). In particular, the parties disagree as to whether Solomon's claim—that Buckle and Ches gave false information to her insurer, resulting in discontinuation of disability benefits—comes within the definition of "professional or administrative services," which are defined by the Texas Medical

8

Liability Act as "those duties or services that a physician or health care provider is required to provide as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(24).

In *Baylor Scott & White, Hillcrest Medical Center v. Weems,* our Supreme Court effectively resolved the dispute before us. 575 S.W.3d 357 (Tex. 2019).

In *Weems*, the plaintiff sued a hospital for intentional infliction of emotional distress, alleging that a nurse knowingly and intentionally recorded false information in someone else's medical record. *Id.* at 361. In the record, the nurse described a patient's injury as a gunshot wound to the head resulting from having been shot at point-blank range. *Id.* The nurse based this description of the injury on the accounts of the patient and an emergency medical technician. *Id.* According to the plaintiff, this description was false, inasmuch as he maintained the patient had not even been shot, and the falsehood resulted in him being indicted for aggravated assault and incarcerated for almost two years as of the filing of his lawsuit. *Id.* at 361–62.

The plaintiff failed to timely serve an expert report, and the hospital moved to dismiss his suit under the Texas Medical Liability Act. *Id.* at 362. The plaintiff maintained that the Act did not apply because he was not asserting a medical malpractice claim, but the trial court disagreed and dismissed his lawsuit. *Id.*

Eventually, *Weems* ended up in our Supreme Court, which held that the plaintiff's claim was a "health care liability claim" and that the plaintiff's failure to timely file an expert report required the dismissal of his lawsuit. *Id.* at 363–66.

The Court began its analysis by observing that when a plaintiff brings a claim against a health care provider based on facts implicating the health care provider's conduct during the course of a patient's care, treatment, or confinement, the plaintiff's claim is presumptively a "health care liability claim" subject to the expert-report requirement imposed by the Act. *Id.* at 363. When this is the case, the plaintiff bears the burden to rebut this presumption, and, if the plaintiff fails to do so, then dismissal of his lawsuit is mandatory. *See id.* In *Weems*, this presumption applied because the plaintiff's claim that the nurse falsified a medical record was based on the nurse's alleged conduct during the course of a patient's care and treatment. *Id.*

The Court then turned its attention to whether the gravamen of the plaintiff's claim concerned a "claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care." *Id.* at 364 (quoting statutory definition of "health care liability claim"). And the Court concluded that, at a minimum, the plaintiff's "record-falsification claim is premised on an alleged departure from accepted standards of 'professional or administrative services directly related to health care.'" *Id.* (quoting same).

10

In support of this conclusion, the Court reasoned that "maintenance of accurate medical records" falls within the "professional or administrative services" part of the definition of "health care liability claim." *See id.*; *see also* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13), (24). Among other things, the Court explained that this is so because rules enacted by the Texas Medical Board require licensed physicians to maintain accurate medical records regarding assessments, clinical impressions, and diagnoses. *Weems*, 575 S.W.3d at 365. If a physician violates these rules, the Board can revoke the physician's license. *Id.* Stated succinctly, because the making and maintenance of accurate medical records "is a service health care providers and physicians must provide as a condition of maintaining their respective licenses," the making and maintaining of these records qualifies as "professional or administrative services" under the Act. *Id.*; *see also* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(24) (defining "professional or administrative services" to include "those duties or services that a physician or health care provider is required to provide as a condition of maintaining the physician's or heath care provider's license, accreditation status," and certain governmental certifications).

Solomon's record-falsification claim is indistinguishable from the one the plaintiff made in *Weems*. Like the plaintiff in *Weems*, Solomon claims that the defendants created a false record—Buckle intentionally so and Ches negligently—concerning her medical treatment and assessment that adversely affected her outside

11

the context of her medical treatment and assessment, and *Weems* is therefore dispositive of the status of Solomon's claim as a "health care liability claim." *See Weems*, 575 S.W.3d at 366 (noting that "statutory definition of a health care liability claim does not distinguish between departures that are intentional or merely negligent" in holding that claim at issue was "health care liability claim"). Accordingly, Solomon was required to serve an expert report under the Act. *Id.*

Solomon maintains that her record-falsification differs from the one in *Weems* because hers involves false statements made in an insurance form, rather than false statements in a medical record. But this is a distinction without a difference. Just as physician licensing is conditioned on the making and maintenance of accurate medical records, Texas law prohibits physicians from engaging in "unprofessional or dishonorable conduct that is likely to deceive or defraud the public." TEX. OCC. CODE §§ 164.052(a)(5), 164.053(a). The Texas Medical Board is statutorily authorized to take disciplinary action against a physician who engages in this kind of conduct. *Id.* § 164.051(a)(1). The Board has enacted a corresponding rule in which it provides a nonexclusive list of acts that violate the statute. 22 TEX. ADMIN. CODE § 190.8(2). Notably, the acts listed as violations by the Board demonstrate that false statements to insurers may qualify as unprofessional and dishonorable conduct subjecting physicians to discipline. *See id.* § 190.8(2)(J) (stating that billing statement to "a third party payer that the licensee knew or should have known" was

12

"false, fraudulent, misrepresents services provided, or otherwise does not meet professional standards" constitutes unprofessional and dishonorable conduct).

Here, Solomon claims that Buckle saw her on a single occasion on April 15, 2021. Solomon further claims that the insurance form corresponding to this lone visit is false because it recites clinical impressions or diagnoses for which Solomon was not medically assessed by Buckle, as the visit solely concerned Solomon's knee injury. In short, Solomon alleges the form mispresented the services Buckle provided, and that Buckle intentionally misrepresented these services. This allegation, if true, qualifies as unprofessional and dishonorable conduct, which a physician, like Buckle, must refrain from engaging in as a condition of maintaining her license. *See id.* Hence, Solomon's claim based on this underlying conduct is a "health care liability claim" under the Texas Medical Liability Act. *See Weems*, 575 S.W.3d at 363–66; *see also* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13), (24). And it is immaterial that Solomon makes no reference to the relevant statutes or Texas Medical Board rule that prohibits the underlying conduct she complains of in her petition. *See Rogers*, 623 S.W.3d at 350 (stating that any claim premised on facts that could support claim for departures from accepted standards of professional or administrative services is health care liability claim "regardless of whether the plaintiff alleges the defendant is liable for breach of any of those standards").

Solomon also maintains that her record-falsification claim differs from the one in *Weems* because false statements made in an insurance form, as opposed to false statements made in a medical record, do not directly relate to health care, as required by the Texas Medical Liability Act's definition of "health care liability claim." *See* TEX. CIV. PRAC. & REM. CODE § 74.001(13) (requiring that "professional or administrative services" be "directly related to health care" to constitute "health care liability claim"); *see also Tex. W. Oaks Hosp. v. Williams*, 371 S.W.3d 171, 184–86 (Tex. 2012) (explaining that legislature added "directly related to health care" to Act at same time that it added "professional or administrative services" such that former modifies latter).

Once again, *Weems* forecloses Solomon's position. In *Weems*, the Court held that maintenance of medical records is directly related to health care, reasoning in part that this is so because "medical records must be created during the patient's care" and affect the patient's future care. *Weems*, 575 S.W.3d at 365. This same reasoning equally applies to the insurance form at issue. While the form itself was completed a little more than a month after Solomon's lone appointment with Buckle, the information recorded in the form is ostensibly based on the patient assessment made by Buckle at the appointment and reports a treatment plan to the insurer. That is, all the information contained in the form purports to be based on the medical services rendered to Solomon as part of her care and refers to future care. Hence, the

14

allegedly false statements made in the insurance form are every bit as directly related to health care as the allegedly false statements at issue in *Weems*. *See id.* (specifying that "directly related" means "an uninterrupted, close relationship or link between the things being considered"); *see also* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(10) (defining "health care" as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement"). Whether Solomon ever saw Buckle again or continued to be Buckle's patient when the insurance form was prepared and sent to Solomon's insurer is immaterial to whether the form is directly related to Solomon's health care. *See Christus Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 535–36 (Tex. 2016) (holding claim that hospital engaged in fraudulent conduct to conceal medical malpractice committed with respect to deceased patient was directly related to health care even though fraudulent conduct occurred after patient's treatment or care).

Finally, in closing, we note that our conclusion that Solomon's claim is a "health care liability claim" subject to the Texas Medical Liability Act is reinforced by the likelihood that the claim would require her, the defense, or both to put on expert testimony at trial. *See Weems*, 575 S.W.3d at 365–66 ("The necessity of expert testimony to prove or refute the merits of a claim against a physician or health care provider is sufficient to establish that the claim is a health care liability claim.").

15

Solomon states in her reply brief in this court that she was seen by "Buckle during an appointment that lasted approximately 10 minutes." Solomon argues that this was her only appointment with Buckle, and that Buckle told her "an MRI was needed before a determination could be made" about her knee injury, so "a physical exam was not completed" at the brief appointment. Solomon claims the clinical impressions or diagnoses made in the insurance form are false because the physical exam required to make them did not take place, and Buckle obviously knew as much. Implicit in this claim is a contention that, under accepted standards of medical care, a physician could not render the clinical impressions or diagnoses that Buckle purported to make in the form based on the limited treatment or care Solomon received from Buckle. Whether Buckle's clinical impressions or diagnoses could be made under these circumstances most likely presents a question for a physician. *See, e.g.*, *Methodist Hosp. v. German*, 369 S.W.3d 333, 339 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (noting that standard of care and breach of standard of care is usually proved through expert testimony with respect to health care providers).

The trial court did not err in dismissing Solomon's suit for failure to timely serve an expert report. We overrule the sole appellate issue presented by Solomon.

## ATTORNEY'S FEES

Buckle, Ches, and HCA Health Services contend that the trial court erred in not awarding them their attorney's fees under the Texas Medical Liability Act.

16

## Standard of Review

Whether a party is entitled to recover attorney's fees under a given statute, as opposed to what amount of fees is recoverable, is generally a question of law we review de novo. *See Willacy Cty. Appraisal Dist. v. Sebastian Cotton & Grain*, 555 S.W.3d 29, 37–38 (Tex. 2018) (characterizing entitlement to fees under particular statute as question of statutory construction that is reviewed de novo on appeal).

## Applicable Law

When a physician or health care provider successfully moves for dismissal under the Texas Medical Liability Act, the trial court "shall" enter an order that "awards to the affected physician or heath care provider reasonable attorney's fees and costs of court incurred" by them. TEX. CIV. PRAC. & REM. CODE § 74.351(b)(1). Thus, an award of fees and costs is mandatory when an expert report is required by the Act and not timely served. *Garcia v. Gomez*, 319 S.W.3d 638, 640 (Tex. 2010). Of course, even when a statute, like this one, provides for an award of attorney's fees, the party invoking the statute must demonstrate its entitlement to the award it seeks. *See, e.g.*, *Rohrmoos Venture v. UTSW DVA Healthcare*, 578 S.W.3d 469, 488–89 (Tex. 2019) (explaining that party who seeks attorney's fees under fee-shifting statute must prove fees sought are reasonable and necessary as well as any additional requisite to recovery of fees imposed by fee-shifting statute at issue);

*Osterberg v. Peca*, 12 S.W.3d 31, 55–56 (Tex. 2000) (holding that party seeking fees under statute waived right to appeal from judgment on issue of attorney's fees).

**Analysis**

In conjunction with their motion to dismiss, Buckle, Ches, and HCA Health Services submitted an affidavit made by counsel and billing records in support of their claim for attorney's fees. The trial court did not award them any attorney's fees. On appeal, Buckle, Ches, and HCA Health Services ask us to hold that they are entitled to the amount of attorney's fees they sought as a matter of law and modify the trial court's judgment to include an award of fees in the requested amount.

However, if a trial court refuses to award any attorney's fees whatsoever when a statute mandates an award, the proper remedy on appeal ordinarily is remand of the cause to the trial court for a new trial on the amount of reasonable and necessary attorney's fees because reasonableness and necessity are questions of fact for a factfinder, unless the evidence is conclusive on these questions. *See Kroesche v. Wassar Logistics Holdings*, No. 01-20-00047-CV, 2023 WL 1112002, at *29 (Tex. App.—Houston [1st Dist.] Jan. 31, 2023, pet. denied) (mem. op.) (holding so in context of statute requiring fee award when party recovers damages in contract).

While Buckle, Ches, and HCA Health Services implicitly contend their evidence of attorney's fees is conclusive, they have not briefed this issue. They have neither provided substantive argument nor supporting authority for the proposition

that the evidence of their fees is conclusive, such that we could modify the trial court's judgment in their favor and affirm as modified, as they request we do on appeal. Accordingly, Buckle, Ches, and HCA Health Services have waived their contention that they conclusively proved their entitlement to attorney's fees in the amount requested. *See* TEX. R. APP. P. 38.1(i) (requiring brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Guimaraes v. Brann*, 562 S.W.3d 521, 538 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("Failure to cite appropriate legal authority or to provide substantive analysis of the legal issues presented results in waiver of a complaint on appeal."); *Jackson Walker, LLP v. Kinsel*, 518 S.W.3d 1, 18–19 (Tex. App.—Amarillo 2015) (stating appellate court had no obligation to parse forty pages of record cited by party in search of evidence supporting appellate complaint or flesh out party's skeletal argument and holding that party therefore waived appellate complaint due to inadequate briefing), *judg't aff'd*, 526 S.W.3d 411 (Tex. 2017).

In situations like this one, in which the record contains some evidence supporting an award of attorney's fees but the amount recoverable has not been conclusively proved, we usually would remand to the trial court for it to decide the appropriate amount of attorney's fees to award in the first instance. *See Kroesche*, 2023 WL 1112002, at \*29. But there is a wrinkle: in their brief as cross-appellants, Buckle, Ches, and HCA Health Services have requested that we modify the trial

19

court's judgment to include their requested attorney's fees, but they have not requested in the alternative that we reverse the trial court's judgment and remand. And because they have not requested remand, we therefore affirm. *See Stevens v. Nat'l Educ. Ctrs.*, 11 S.W.3d 185, 186 (Tex. 2000) (per curiam) (denying petition for review because appropriate remedy for ostensible error was a new trial but petitioner sought reversal and rendition alone rather than reversal and remand); *Jay Petrol. v. EOG Res.*, 332 S.W.3d 534, 538 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (explaining that appellate court cannot grant relief not requested, so that if appellant seeks reversal and rendition we cannot reverse and remand instead).

In sum, the trial court erred in not awarding attorney's fees. But we cannot correct this error because Buckle, Ches, and HCA Health Services have neither shown that they conclusively proved the amount of their fees nor asked us to reverse and remand this cause to allow them to prove the amount of their attorney's fees.

## SANCTIONS

In their responsive brief as appellees, Buckle, Ches, and HCA Health Services included a motion for sanctions, in which they requested that we impose unspecified sanctions on Solomon or her counsel for various misstatements of fact in her brief.

The lone legal authority that Buckle, Ches, and HCA Health Services cited in support of their motion is Rule 52.11 of the Texas Rules of Appellate Procedure. This rule does not apply, as it concerns original proceedings in the Supreme Court

20

of Texas and the intermediate appellate courts. *Blair v. Blair*, 642 S.W.3d 150, 162 (Tex. App.—El Paso 2021, no pet.). This is an appeal, not an original proceeding.

Apart from their citation of an inapplicable rule, Buckle, Ches, and HCA Health Services have not identified, even in a general way, the legal framework—standard of review and applicable law—that applies to their motion. *See* TEX. R. APP. P. 10.1(a)(2) (requiring motion to "state with particularity the grounds on which it is based"); *see also Guimaraes*, 562 S.W.3d at 538 (citing authority for proposition that appellate court does not have duty to research law and fashion legal argument for parties). Therefore, we will not impose sanctions on Solomon or her counsel.

## CONCLUSION

We affirm the trial court's judgment.

We deny Buckle, Ches, and HCA Health Services's motion for sanctions.

Gordon Goodman
Justice

Panel consists of Justices Goodman, Countiss, and Farris.